STATE of Missouri, Respondent,

v.

Jimmy Ray LAW, Appellant.

No. WD 46130.

Missouri Court of Appeals,
Western District.

Jan. 12, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
March 2, 1993.

Patrick Woodley, Warsaw, for appellant.

Terri Spencer Rager White, Asst. Pros. Atty., Harrisonville, for respondent.

Before LOWENSTEIN, C.J., and TURNAGE and HANNA, JJ.

TURNAGE, Judge.

Jimmy Law was convicted after a bench trial of misdemeanor possession of marijuana in violation of § 195.200.1(a), RSMo 1986. The court assessed punishment at a fine of $250.00 and 365 days in jail, but execution of the jail sentence was suspended and Law was placed on probation. Law contends his motion to suppress evidence should have been sustained, that his arrest was illegal and the complaint was not verified. Affirmed.

In July 1991 Trooper Jackson of the State Highway Patrol stopped Law's vehicle on Highway 71 in Cass County for speeding. When Jackson ran a check on Law he found that Law was on probation for possession of marijuana. Jackson had Law sit in his patrol car and he noticed that Law's hands were visibly shaking and Jackson thought that Law was much more nervous than most people would be in the same circumstance.

While Jackson was writing a speeding ticket he asked Law if he had anything illegal in his vehicle and Law replied that he did not. Jackson then asked Law if he had any guns or knives or anything illegal in his car and Law stated that he did not. After Jackson completed writing the traffic citation he asked Law if he would mind if Jackson searched his vehicle. Jackson testified that Law said no, he did not mind. Jackson requested Law to get his keys from the ignition and open the trunk. Law did so and stood beside Jackson at the trunk.

Jackson stated that Law had several bags in the trunk. Jackson opened a nylon bag and found two shaving kits. He opened one of the kits and found a large amount of cash wrapped in rubber bands. After finding the cash, Jackson handcuffed Law for the safety of both Law and himself and placed Law in the patrol vehicle. Jackson radioed for assistance and a patrol sergeant came to the scene. Jackson continued his search and inside the second shaving kit he found a prescription medicine bottle which contained marijuana and marijuana seeds.

Jackson told Law that he had discovered the marijuana and Law told him that he had forgotten that the marijuana was in the car. Law also stated that he had started saving the money before he was arrested on the charge on which he was placed on probation.

Law first contends that the evidence was insufficient to support the overruling of the motion to suppress evidence of the marijuana. Law contends that Jackson could not remember the exact words that he used requesting consent to search the vehicle and that the consent was given only to search for guns or knives. In reviewing the denial of a motion to suppress, a court looks "only to determine whether the evidence was sufficient to support the ruling." *State v. Burkhardt*, 795 S.W.2d 399, 404[6] (Mo. banc 1990). In presenting his contentions, Law relies on his testimony and overlooks the testimony of Jackson. Jackson testified unequivocally that he asked Law if he would mind if Jackson searched his vehicle. Law said that he did not mind. This was sufficient evidence to support the court's ruling that the motion to suppress would be overruled. Law's argument that Jackson could not recall his exact words fails because Jackson testified that the language quoted above was the language that he had used in requesting consent to search the vehicle.

Law further contends that the consent was only given to search for guns and knives but Jackson's testimony was that he asked Law if he would mind if he searched

the vehicle. There was nothing in that request that limited the search to any particular subject. Law stresses the question that Jackson had previously asked if Law had any guns or knives or anything illegal in his car. But that question was preliminary to the question requesting consent to search. Under Jackson's testimony, which the court was free to believe, the request was for a general consent to search the vehicle.

■ It is well settled that consensual searches are reasonable and constitute an exception to the prohibition of the Fourth Amendment to the United States Constitution. *Florida v. Jimeno*, —— U.S. ——, ——, 111 S.Ct. 1801, 1803[1–3], 114 L.Ed.2d 297 (1991).

■ The principal contention of Law concerning the search is that his consent did not extend to the opening of closed bags and the opening of containers found in those bags. That contention was answered in *Jimeno*. In *Jimeno*, a police officer pulled a car over because of a belief that the car contained illegal drugs. The officer made the stop because of a traffic violation and told Jimeno that he had been stopped for a traffic violation but that the officer had reason to believe that he was carrying narcotics in his car. The officer asked permission to search the car and Jimeno gave permission. The officer saw a folded brown paper bag on the floorboard of the rear seat, picked up the bag and opened it and found cocaine.

Jimeno filed a motion to suppress the evidence of cocaine found in the bag on the ground that his consent to search the car did not extend to the closed paper bag. The Florida trial court, appellate court and supreme court held that the motion to suppress should be sustained. The U.S. Supreme Court disagreed. The *Jimeno* Court stated that "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" —— U.S. at ——, 111 S.Ct. at 1803–04[1–3]. The Court stated that the ques-

tion is whether it is reasonable for an officer to consider a general consent to search a car to include a consent to examine a paper bag on the floor of the car. In answering that question the Court stated that Jimeno gave the officer permission to search the car without placing any explicit limitation on the scope of the search. The officer had informed Jimeno that he believed he was carrying narcotics and that he would be looking for narcotics in the car. The Court stated:

> We think that it was objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container. "Contraband goods rarely are strewn across the trunk or floor of a car." *Id.* at ——, 111 S.Ct. at 1804. [quoting *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)]. The authorization to search in this case, therefore, extended beyond the surfaces of the car's interior to the paper bag lying on the car's floor.

*Id.* The Court stated that Jimeno had contended and the Florida Supreme Court had agreed that if the police wished to search closed containers within a car they must separately request permission to search each container. The Court held that it saw no basis for adding this "sort of superstructure to the Fourth Amendment's basic test of objective reasonableness." *Id.* at [6].

The Court further stated: "A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Id.*

The facts in this case are identical to the facts of *Jimeno*. Here, Jackson knew that Law had been convicted of possession of marijuana and was on probation. Jackson requested Law to consent to a search of

the vehicle and Law gave that consent. The consent was not limited in any manner. Law knew that Jackson was going to be looking for anything illegal and as the Court stated in *Jimeno,* reasonable persons know that drugs are generally carried in some kind of container. It was objectively reasonable for Jackson to conclude that the general consent to search the vehicle included consent to search the bags in the trunk and any containers located therein. There was sufficient evidence to support the court's denial of the motion to suppress.

■ Law further contends that the seizure of the marijuana resulted from an illegal arrest because he was held thirty-nine minutes after Jackson wrote the traffic ticket before the marijuana was found and Jackson placed Law under arrest for possession of marijuana. The lapse between the time the traffic ticket was written and the arrest of Law for possession of marijuana was not due to an arrest but was consumed by the search to which Law consented. Because Law consented to the search he cannot complain about the time which the search took which in this case was reasonable.

■ Law finally contends that the court never acquired jurisdiction of the charge against him because the complaint was not verified as required by Rule 21.04. No objection was made prior to the trial concerning the lack of verification and the first mention of this defect is on this appeal. In *State v. Rhodes,* 591 S.W.2d 174, 176 (Mo.App.1979), the court considered the failure to verify a complaint in a felony case. The court quoted from *State v. Brown,* 181 Mo. 192, 79 S.W. 1111, 1121 (1904), that the purpose of the verification on an information was to "afford the defendant a guaranty of the good faith of the prosecution, and to prevent a careless and reckless prosecution of a citizen." *Id.* The court further quoted from *Brown* as follows: "We have consistently ruled that an information is valid without a verification if no motion to quash is filed. This is only a formal defect, and the appellant going to trial without first having filed a motion to

quash the information has waived this defect." *Id.* The court concluded that what had been said about an unverified information applied equally as well to an unverified complaint.

The holding in *Rhodes* is consistent with the holding in *Walster v. State,* 438 S.W.2d 1, 3[3, 4] (Mo.1969), in which the court stated that it had held repeatedly that deficiencies in an information such as a failure to sign and verify the information may be waived if the defendant did not raise the question by motion to quash prior to trial. *See also State v. Parkhurst,* 845 S.W.2d 31 (Mo. banc 1992).

Certainly if the failure to verify a complaint in a felony case is waived by failure to raise the question prior to trial, the failure to verify a complaint in a misdemeanor will likewise be waived if the matter is not raised before trial. By proceeding to trial without objection based on the lack of verification in the complaint, Law waived such defect.

The judgment is affirmed.

All concur.